## Evans' Estate

*Joseph K. Fornance,* for appellant.

*Garrett A. Brownback* and *Montgomery, McCracken, Walker & Rhoads,* for accountant.

HOLLAND, P. J., April 14, 1947.—The codicil in question may be identified as one of two codicils, both under date of August 5, 1940, one written on two attached sheets of legal cap paper, and one written on one sheet of legal cap paper, which also contains after the signature and date another short codicil of two lines under date of March 1, 1945. It is with this

last codicil written on one sheet of legal cap paper that we are concerned, and our comments from here on have to do exclusively with it.

On both sides of the sheet of legal cap paper are writings, testamentary in character, in the handwriting of testatrix. The side of the sheet upon which are the signature and the date was admitted to probate by the register. The opposite side of the sheet was rejected by the register and probate thereof refused. It is to this action of the register that appellant takes his appeal. It must be noted that the rejected part, nevertheless, is in the possession of the register and on file with him, as it was impossible to admit to probate one side of the sheet without retaining also the other side. Apparently the theory upon which the register rejected the one side of the sheet of paper was that it was not signed at the end thereof. Appellant argues that the rejected side was the beginning of the testamentary writing or codicil and the admitted side was a continuation thereof, so that when testatrix signed the admitted side of the paper she signed the codicil at the end thereof as a continuous and complete instrument. He directs the attention of the court to the fact that the red line running down the left side of the rejected side of the sheet, which is conventionally upon all legal cap paper, would indicate that the testatrix wrote that side first, the red line being to her left as she wrote it, and that the red line on the admitted side of the paper was on the writer's right side. He argues from this that she began writing the instrument as a complete whole, beginning on the rejected side with the red line to her left in the usual and conventional way that a writer would write upon this type of paper, and that when she had finished writing on that side, instead of turning it over from the bottom side of the paper and continuing writing with the red line on her left side on the admitted side of

the paper, she turned the paper from right to left and continued her writing, thus putting the red line on her right side as she continued to complete the codicil, and then signing the whole codicil at the end thereof. Of course, if this was the way in which she wrote the paper, it is a complete codicil written on both sides of the sheet as a continuous and complete operation and when she signed it she signed it at the end thereof as an entire codicil. If this is the case, then the rejected side of the paper should have been admitted to probate with the admitted side as one complete instrument.

We have examined the instrument very carefully, and there are some inferences that can be drawn with certainty and others that are doubtful. There is no doubt that both sides of the paper are in the handwriting of testatrix. There is some doubt as to whether the ink used was the same in writing one side as that which was used in writing the other side, from which it might be inferred that the two sides were written at different times. The legacy to the appellant and a gift of a picture on the rejected side seem also to be written in different ink from that employed in the writing of the other matter on both sides. It might be argued that this would indicate that these two gifts were also written in at different times from the writing of the rest of the instrument. However, this is all surmise. There are numbers on the left side of the rejected side numbering the various items of gift, but they are not in sequence, and, although they may have meant something to testatrix, they are totally unintelligible and without significance to any other observer. The fact remains that all the writing on the rejected side of the paper is testamentary in character and shows an intent of giving to the respective persons therein named the respective articles in each item stated. Whether the admitted side of the paper is a continuation of the rejected side or not could rea-

sonably be inferred either way, so that the register was entirely justified in drawing what he regarded as a more reasonable inference and rejecting the one side of the paper. On the other hand, it can be just as reasonably inferred that the admitted side of the paper is a continuation of the rejected side. When, therefore, there are two equally reasonable inferences to be drawn, it would seem that the course of the appellate court should be clear. It is well established that all doubtful presumptions are in favor of a testamentary writing. So solicitous is the law that the will of a testator should not be frustrated that all doubtful inferences should be resolved in favor of testacy. This alone would incline us to favorably consider the probate of the rejected side, but we need not rest upon this ground alone. The argument of appellant is most convincing that testatrix wrote the rejected side first, and, instead of turning the paper over from the bottom side, she turned it over from the right to left and continued writing the other side which was admitted to probate. As near as may be determined in a doubtful case, we regard this as the most reasonable inference, which, of course, would result in both sides of the paper being a continuing instrument complete in itself and signed at the end thereof.

It is well established that in any doubtful matter in regard to a testamentary paper, evidence may be taken as to the circumstances under which testator wrote it. The evidence showed that appellant and his mother, who was a sister of testatrix, resided with testatrix for some time, and that appellant, who was the nephew of testatrix, stood in her affectionate regard. There is every reasonable inference from these circumstancs that she intended to give him a gift, which finally materialized in the $500 legacy contained in the rejected side. At the hearing of the appeal the court carefully checked with counsel for appellant the various articles bequeathed on both sides of the

paper and the subject matter of all the legacies on both sides of the paper, and it was found that all of the gifts on both sides of the paper or certainly upon the rejected side were duplicated in the will or other codicils with the exception of the $500 to appellant and a portrait referred to at the end of the rejected side, which apparently goes to a man by the name of Rial R. McCaffery. So that the only difference that will result in the probate of the rejected side is that appellant will receive his legacy of $500, less inheritance tax, and McCaffery will receive the portrait upon the payment of the inheritance tax on the inventory value thereof. No other gift will be affected whatsoever except that the four residuary beneficiaries will be deprived of these two legacies accordingly.

The citation was served upon the four residuary beneficiaries and proof of service upon them of the time and place of the hearing of the appeal was filed upon the day of the hearing, March 24, 1947. Only one of the four residuary beneficiaries filed an answer and that one was an informal one sent to the court by mail.

Upon a consideration of the case as a whole, we are distinctly of the opinion that this rejected side of this sheet of paper should be admitted to probate together with the other side which was admitted to probate as comprising one whole and entire codicil. Our decree reversing the decree of the register will be tantamount to probate thereof as the paper writing in question is already in the physical possession of the register and on record amongst the papers of the estate. Our decree therefore will make the rejected side of the paper effective, with the net result of making the legacy of $500 to appellant effective and the gift of the portrait to Rial R. McCaffery effective. In the adjudication upon the executor's account, the auditing judge found as a conclusion of law that all the legacies except those in the will that preceded the clause of the will exempting those legacies from inheritance tax

were subject to inheritance tax. These legacies in question fall within that category and are therefore subject to the collateral inheritance tax at the rate of 10 percent.

And now, April 14, 1947, the decree of the register of wills rejecting one side of the codicil of August 5, 1940, for probate is reversed and said side of the sheet of paper is directed to be probated, and is hereby declared to be probated and the two gifts in question referred to in the opinion hereinabove are declared to be effective and due the respective legatees less inheritance tax.